# Exhibit A

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYLER TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | Case Number: 3-06CV1693-P |
| | § | |
| VS. | § | |
| | § | |
| VIRTUAL IMPACT PRODUCTIONS, INC., | § | |
| | § | |
| | § | |
| Defendant | § | |

## DEFENDANT'S INITIAL DISCLOSURES

TO:  Plaintiff Tyler Technologies, Inc., by and through its attorney of record John W. Patton and Megan K. Dredia of Hughes and Luce, L.L.P., 1717 Main Street, Suite 2800, Dallas, Texas, 75201.

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant submits the following initial disclosures. Defendant reserves the right to supplement these disclosures pursuant to Federal Rule Civil Procedure 26(e).

### PERSONS WITH KNOWLEDGE

1.  Michelle Robinson
    Virtual Impact Productions 607 St.
    Andrews Drive Sarasota, Florida
    34243

    Knowledge and information regarding the patent in question as well as development and actions subsequent to patent which are in controversy with Plaintiff.

2.  Stephanie Robinson
    Virtual Impact Productions
    607 St. Andrews Drive
    Sarasota, Florida 34243

    Knowledge and information regarding the patent in question as well as development and actions subsequent to patent which are in controversy with. Plaintiff.

3.    Robert Slider
      Virtual Impact Productions 607 St.
      Andrews Drive Sarasota, Florida
      34243

      Knowledge and information concerning software involving institutions. Defendant has

      not filed a counter-claim for patent infringement. Defendant is merely defending the

      declaratory action and will supplement or amend as required.

## II. DESCRIPTION OF DOCUMENTS

        Pursuant to Federal Rule 26(a)(1)(B), relevant documents within Defendant's custody or

control include (1) copy of the patent at issue; (2) Mazik Emails, May 11, 2005 (Chip Cooper-

Atty), June 1, 2005, June 2, 2005, July 7, 2005 (Sid), July 11, 2005 (Sid); (3) Contract Proposals:

May, 2005-Draft Contract for "Joint Partnership Agreement: by Mazik, June 27, 2005 Draft for

"Joint Program Partnership Agreement" by VIP; (4) February 15, 2005-Mazik incorporation doc;

(5) February 1, 2006-Form K-8:Tyler acquisition of Mazik; (6) August 21, 2006-Copy of

Tylerworks website pages-Assignments-online, VIP at Partners?; (7) September 7, 2006-VIP

Demand letter to Tyler; (8) September 8, 2006-AME Info: InnoKAT/Mazik News release (web).

Additional material is being searched and will upon discovery immediately disclosed to

Plaintiff. Since Plaintiff has pled no set of facts other than a prayer for relief based upon a

demand letter of Defendant, additional supplementation maybe required as Plaintiffs position is

clarified.

## III. INSURANCE AGREEMENTS AND DAMAGE CALCULATIONS

        (A)    No insurance policies exist under which Plaintiff could possibly recover

        against the Defendant as best known of this date.

        (B)    At this time, Defendant does not assert a damage claim subject to development

of further facts or authority. Supplementation or amendment will be supplied as required.

Respectfully submitted,

MANUEL P. MONTEZ
SBN# 14286000
851 Culebra
San Antonio, Texas 78201
(210) 736-1680- office
(210) 736-1689- fax
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the Defendant's Initial Disclosures was served on this 22nd day of February, 2007 to: John W. Payton, Megan K. Dredla, 1717 Main Street, Suite 2800, Dallas, Texas 75201; Eric W. Buether, Green Traurig, LLP, 2200 Ross Avenue, Suite 4700E, JP Morgan Chase Tower, Dallas, Texas 75201.

MANUEL P. MONTEZ

# Exhibit B

FLORIDA DEPARTMENT OF STATE
DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List    Next on List    Return To List

Events    No Name History

## Detail by Entity Name

### Florida Profit Corporation

VIRTUAL IMPACT PRODUCTIONS, INC.

### Filing Information

| | |
|---|---|
| **Document Number** | P98000059072 |
| **FEI Number** | 593520955 |
| **Date Filed** | 07/01/1998 |
| **State** | FL |
| **Status** | ACTIVE |
| **Effective Date** | NONE |
| **Last Event** | AMENDMENT |
| **Event Date Filed** | 12/15/1998 |
| **Event Effective Date** | NONE |

### Principal Address

607 ST. ANDREWS DRIVE
SARASOTA FL 34243

Changed 04/24/2006

### Mailing Address

607 ST. ANDREWS DRIVE
SARASOTA FL 34243

Changed 04/24/2006

### Registered Agent Name & Address

ROBINSON, MICHELLE
607 ST. ANDREWS DRIVE
SARASOTA FL 34243

Address Changed: 04/24/2006

### Officer/Director Detail

**Name & Address**

Title PD

ROBINSON, MICHELLE
607 ST. ANDREWS DRIVE
SARASOTA FL 34243

Title D

SLIDER, ROBERT
607 ST. ANDREWS DRIVE
SARASOTA FL 34243

Title D

ROBINSON, STEFANIE
607 ST. ANDREWS DRIVE
SARASOTA FL 34243

**Annual Reports**

**Report Year  Filed Date**
**2005**        04/17/2005
**2006**        04/24/2006
**2007**        02/11/2007

**Document Images**

02/11/2007 -- ANNUAL REPORT

04/24/2006 -- ANNUAL REPORT

04/17/2005 -- ANNUAL REPORT

05/04/2004 -- ANNUAL REPORT

04/30/2003 -- ANNUAL REPORT

05/23/2002 -- ANNUAL REPORT

05/16/2001 -- ANNUAL REPORT

05/24/2000 -- ANNUAL REPORT

05/06/1999 -- ANNUAL REPORT

12/15/1998 -- Amendment

07/01/1998 -- Domestic Profit

| **Note:** This is not official record. See documents if question or conflict. |
| --- |

Home  Contact us  Document Searches  E-Filing Services  Forms  Help
Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# Exhibit C

May 2, 2007
Robert Slider\Michelle Robinson
607 St. Andrews Dr.
Sarasota, FL 34243

John Marr
Tyler Technologies Corp.
5949 Sherry Ln
Suite 1400
Dallas, TX 75225

Dear Sir,
 This is to inform you that we are
the holders of patent # 6505031.
We have no intention of sueing Tyler
Tech. corp. or causing damage.
 It would be highly improper for
you to file a declatory action against
us, as we pose no threat to you or
Tyler Technologies Corp.

Respectfully,

MICHELLE ROBINSON                ROBERT SLIDER

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TYLER TECHNOLOGIES, INC. | § | |
| | § | |
| Plaintiff, | § | Case Number: 3-06CV1693-P |
| | § | |
| VS. | § | |
| | § | |
| VIRTUAL IMPACT PRODUCTIONS, | § | |
| INC., | § | |
| | § | |
| Defendant | § | |

## DEFENDANT'S RESPONSES TO PLAITIFF'S FIRST SET OF INTERROGATORIES

TO:   Plaintiff Tyler Technologies, Inc., by and through its attorney of record John W. Patton and Megan K. Dredla of Hughes and Luce, L.L.P., 1717 Main Street, Suite 2800, Dallas, Texas, 75201.

     Now comes Defendant, Virtual Impact Productions, Inc. and Pursuant to the Federal Rules of Civil Procedure submits the following Responses to Plaintiff's First Set of Interrogatories. Defendant reserves the right to supplement these interrogatories pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

MANUEL P. MONTEZ
SBN# 14286000
851 Culebra
San Antonio, Texas 78201
(210) 736-1680- office
(210) 736-1689- fax
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the Defendant's Responses to Plaintiff's First Set of Interrogatories was served on this __15th__ day of May, 2007 to: John W. Payton, Megan K. Dredla, 1717 Main Street, Suite 2800, Dallas, Texas 75201.

MANUEL P. MONTEZ

# INTERROGATORIES

**INTERROGATORY NO. 1**

Identify each product made, sold, used or offered for sale by Tyler that you contend infringes any claim of the `031 Patent, and for each product: (a) state all facts upon which you based your contention that each product infringes the `031 Patent; (b) identify the functions and features of that product you contend infringes any claim of the `031 Patent.

**ANSWER:    Virtual Impact Productions has no interest in the '031 Patent such that it could possibly maintain an action against Tyler Technologies Incorporated.  Virtual Impact P.I has no standing to assert the claims of third parties to which it has no ownership interest.  Virtual Impact Productions Incorporated alleged only that Tyler Technologies placed Virtual Impact Productions Incorporated name on it's web site as a "partner".  This complaint was resolved to the complete satisfaction of Virtual Impact Productions Incorporated by the removal of the offending material.**

**INTERROGATORY NO.2**

Identify all persons you have ever charged with infringement of the `031 Patent or communicated with concerning the possibility of that person entering into a license, covenant not to sue, or other agreement under the `031 Patent, and identify all documents that relate to such charge or communications, including all correspondence with each person, any resulting license, covenant not to sue, or other agreements.

**ANSWER:    Virtual Impact Productions Incorporated has charged no person or entity with infringement of the '031 Patent.  Virtual Impact Productions Incorporated and Mazik USA were in negotiations for software bundling at which time, had a partnership agreement been reached, a usage license agreement was to be acquired from the owners of the '031 Patent.  No agreement was reached. The following documents were part of the negotiations but never consummated:**

    **a.  Proposed joint program partnership agreement between Mazik USA Incorporated and Virtual Impact Productions Incorporated.  Author: Sid Siddigui for Mazik USA**

    **b.  Proposed joint program partnership agreement author Virtual Impact Productions Incorporated by and through it's attorney: Frederick Cooper III, Esq. of Buker, Jones and Haley P.C. Atlanta Technology, Intellectual Property, internet law.**

    **c.  Proposed joint program partnership agreement.  This was revised by Mazik USA Incorporated through Sid Siddigui.**

    **d.  E-mail written by attorney Fredrick Cooper III to Robert Slider on subject of comments Re: Proposed Mazik USA agreement, May ll 2005.**

    **e.  E-mail written by Virtual Impact Productions Incorporated through Michelle Robinson, July 7, 2005.  Subject: Virtual Impact Productions contract.**

   f.   E-mail written by Sid Siddigui to Michelle Robinson, July 11, 2005.  Subject:
        Proposed Virtual Impact Productions contract.

# Exhibit E

# Joint Program Partnership Agreement

THIS AGREEMENT is entered into as of June _____, 2005 ("Effective Date"), by and between Virtual Impact Productions, Inc., a Florida corporation with its principal office located at 400 Golf Brook Circle #102, Longwood, FL 32779, Telephone: (321) 206-0372, Facsimile: (206) 206-3138, Contact and email: Robert Slider, robert@virtualed.org ("VIP"), and MazikUSA, Inc., an Illinois corporation with its principal office located at 2644 E. Dempster, Suite 213, Park Ridge, IL 60068, Telephone: 847-803-1046, Facsimile: 847-375-9251, Contact and email: Sid Siddiqui, sid@mazikusa.com ("MazikUSA").

WHEREAS, VIP has developed an ASP based Learning Content Management System Digital Interface Vehicle© (DIV) and other productivity tools including rights to an industry patent to implement communication with parents in a Virtual environment, "Software Products"; and

WHEREAS, the parties desire to enter in a joint partnership agreement to allow MazikUSA and VIP to develop a .NET version of Virtual Impact's current DIV program. This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly develped will be called "MazikUSA-Virtual Impact Learning Content Management System", and will be equally owned by both parties, and

WHEREAS, Virtual Impact will supply its current DIV© code, technical documentation and use of assignment on-line patent towards this newly developed "Program". In return, MazikUSA will fund and redesign this DIV code in .NET to link and interact with the MazikUSA SIS system, subject to the terms and conditions hereof;

WHEREAS, Virtual Impact is authorizing MazikUSA the use of Patent 6,505,031 as part of this newly developed MazikUSA-Virtual Impact DIV "Program". In addition, Virtual Impact authorizes MazikUSA to approach customers and/or vendors who may not be in compliance of the Patent and seek settlements. Proceeds of these settlements will be equally divided between Virtual Impact and MazikUSA for the duration of this agreement. All legal and incidental costs to be born by MazikUSA.

NOW, THEREFORE, in consideration of the foregoing, and in reliance on the mutual agreements contained herein, the parties agree as follows:

1.      Definitions.

        1.1     "Software Product(s)." All computer programs and related documentation produced, owned, and/or licensed by VIP, in source code form, as specified on Exhibit A. Software Product(s) include any Updates provided by VIP hereunder.
        1.2     "Update." A release of the Software Product(s) that is developed and designated by VIP as a change in the tenths digit in the version number [x.(x).x].

        1.3     "Software Product(s) Deliverables." Those deliverables specified on Exhibit A.

        1.4     "Composite Product(s)." Software products produced by MazikUSA for distribution hereunder that result from the integration and merger of MazikUSA products

and/or code as specified on Exhibit A with Software Product(s) licensed and provided by VIP hereunder.

1.5     "Resellers." Companies or organizations that distribute software products to end-users.

1.6     "VIP Branding Features." VIP's proprietary trade names, service marks, trademarks, logos, and indicia of origin and other distinctive branding features as specified on Exhibit A.

1.7     "MazikUSA Branding Features." MazikUSA's proprietary trade names, service marks, trademarks, logos, and indicia of origin and other distinctive branding features as specified on Exhibit A.

1.8     "Proprietary Materials." Materials to be delivered by one party to the other, or used by a party in connection with the delivery of services or the Software Product(s), or for the performance of obligations hereunder.

1.9     "Registration Data." The following data records submitted by end-users of Composite Product(s)n as part of the registration process: school or district, address, and email address.

1.10     "Proprietary Rights." Any and all rights, whether registered or unregistered, in and with respect to patents, copyrights, confidential information, know-how, trade secrets, moral rights, contract or licensing rights, confidential and proprietary information protected under contract or otherwise under law, trade names, domain names, trade dress, logos, animated characters, trademarks, service marks, and other similar rights or interests in intellectual or industrial property.

2.     Derivative Works/Integration and Merger License And Restrictions. Subject to the terms and conditions hereof, including without limitation, Exhibit A attached, and only for term hereof, VIP hereby grants to MazikUSA to develop a .NET version solution based on Virtual Impact's current DIV specifications/source code and create a new product called "MazikUSA/Virtual Impact Learning Content Management System". (Composite Product)

3.     Bundling/Compilation License And Restrictions. Subject to the terms and conditions hereof, and only for the term hereof, the new product will be sold as an add-on to the MazikUSA's solution and will utilize the On-line assignment Patent.  It is understood by the parties, that this joint partnership will not be misconstrued in that Michelle Robinson or Robert Slider are giving up ownership in the Assignment Online Patent 6,505,031, and other Intellectual Property and/or MazikUSA is giving up ownership in their SIS Product and other Intellectual Property. Both companies will continue to own their current products, copyrights and registered patents, provided that the Composite Product(s) remain a separate software offering.

4.     Distribution License; Sublicenses; Restrictions. Subject to the terms and conditions hereof and only for the term hereof, VIP hereby grants to MazikUSA the right and license to use, publicly display, publish, and distribute the Composite Product(s) in object code form only, together with authorized derivative works based thereon, on a standalone basis, and as part of bundled products and/or compilations with other works

only as expressly authorized above, and only through the authorized distribution channel(s) specified below. MazikUSA is authorized to grant sublicenses only in conformity with the Sublicense Terms provided on Exhibit C.

5.      Authorized Distribution Channels. The distribution license granted above is granted both (i) for distribution to end-users located in The United States through a single tier of distribution consisting only of sales personnel with face-to-face contact with end-users, and (ii) for distribution through the Retail Channels consisting of Resellers located in The United States.

6.      Co-Branding Requirements; Branding License. MazikUSA shall incorporate VIP Branding Features and designated copyright notice as specified by VIP into the Composite Product(s), and MazikUSA is authorized to incorporate VIP Branding Features in its discretion into MazikUSA web pages that feature Composite Product(s). All distribution rights and licenses granted herein for Composite Product(s) are subject to the forgoing co-branding requirements. Subject to the terms and conditions hereof, and only for the term hereof, VIP hereby grants to MazikUSA the non-exclusive, worldwide right and license to publicly display VIP Branding Features on Composite Product(s) and on MazikUSA web pages for purposes of promoting and marketing Composite Product(s).

7.      Limited Exclusive License. The license granted herein is exclusive in that VIP represents that VIP has not granted, nor will VIP during the term hereof, grant to another MazikUSA competing integration and merger rights for Software Product(s) that are competitive with Composite Product(s). VIP reserves the right to market the Software Product(s) itself, without limitation.

8.      Exclusive Dealing Restriction. During the term hereof, MazikUSA shall not distribute, or act as an agent or representative of any developer, publisher, or manufacturer, of software programs that are functionally comparable or intended, by applicable marketing and promotional programs directed to such products, to compete directly with the Software Product(s).

9.      Irrevocable Agreement. This Agreement is irrevocable, and the parties may not terminate this Agreement by reason of a patires material breach; provided, however, that in no event shall this provision be construed to nullify any other remedy available to the parties for a material breach by a party that is expressly provided herein or otherwise available at law or in equity.

10.     Export. Software Product(s), including associated technical data, are subject to United States export control laws, and may be subject to export or import regulation in other countries. The parties agree to comply strictly with all such regulations, and acknowledges that it has the responsibility to obtain such licenses to export, re-export, or import Composite Product(s). The parties shall, at its own expense, obtain and arrange for the maintenance in full force and effect of all governmental approvals, consents, licenses, authorizations, declarations, filings and registrations as may be necessary or advisable for the performance of the terms and conditions of this Agreement, including without limitation, fair trade approvals.

11.     Reservation of Rights. All rights not expressly granted to MazikUSA herein are expressly reserved by VIP.

12.     Marketing And Support Obligations. Each party shall perform the marketing and support obligations in accordance with Exhibit B attached.

13.     Royalties. MazikUSA and VIP shall pay to the other in accordance with Exhibit A attached.

14.     Representations and Warranties; Indemnities. Each of the parties represents and warrants to the other that: (i) each party has full legal right, power and authority to enter into and perform this Agreement (including all Exhibits hereto); (ii) the Software Product(s), Proprietary Materials and any branding features of either party specified herein do not infringe or misappropriate any Proprietary Right of any third party, or constitute defamation, invasion of privacy, or violate the privacy rights of any third party; (iii) all Proprietary Rights or other rights in the Software Product(s), Proprietary Materials and any branding features of either party specified herein are either owned by the providing party or are properly sublicensed from third parties granting such party the right to use same as contemplated hereunder; (iv) regarding the collection and use of end-user data, each of the parties represents and warrants to the other that neither party shall violate any rights of any person or entity, including, without limitation, rights of publicity, privacy or personality; and (v) any and all sublicenses granted by MazikUSA in connection with the Composite Product(s) shall be in compliance with the Sublicense Terms provided on Exhibit C. Each party shall defend, indemnify and hold harmless the other, its affiliates, successors, assigns, officers, directors, and employees from and against any and all claims, costs, damages, losses, liabilities, actions, recoveries, judgments and expenses (including actual attorneys' fees and expenses regardless of whether litigation was commenced) arising out of or in connection with a breach/untruth of any express representation and warranty made above in this Section (a "Claim"), provided that: (i) the indemnified party promptly notifies the indemnifying party in writing of the claim promptly upon the indemnified party becoming aware of such Claim; (ii) the indemnifying party shall have exclusive control of the settlement or defense of any action to which the Claim relates; and (iii) the indemnified party cooperates with the indemnifying party in every reasonable way to facilitate such defense or settlement. Once given notice of such Claim, if the indemnifying party does not defend any such Claim, the indemnified party may take any of the above actions and shall be fully indemnified by the indemnifying party.

15.     Warranty Disclaimers. EXCEPT AS EXPRESSLY SET FORTH ABOVE, TO THE EXTENT ALLOWED BY LAW, EACH PARTY ON BEHALF OF ITSELF AND ITS SUPPLIERS HEREBY DISCLAIMS ALL WARRANTIES, BOTH EXPRESS AND IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SYSTEM INTEGRATION, AND DATA ACCURACY. EACH PARTY ACKNOWLEDGES THAT IT HAS NOT RELIED ON ANY REPRESENTATION THAT IS NOT EXPRESSLY SET OUT HEREIN.

16.     Disclaimer of Incidental and Consequential Damages. EXCEPT FOR INDEMNIFICATION OBLIGATIONS ESPRESSLY PROVIDED HEREIN, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER UNDER ANY THEORY INCLUDING CONTRACT AND TORT (INCLUDING NEGLIGENCE AND STRICT PRODUCTS LIABILITY) FOR ANY INDIRECT, SPECIAL OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, EVEN IF THE PARTY CAUSING SUCH DAMAGES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

17.    Limitation of Liability For Direct Damages. Except for indemnification obligations expressly provided herein, the liability of the parties for direct damages shall be as follows; (i) VIP's maximum liability for direct damages of any kind arising out of this Agreement shall be limited to the total amount of royalties paid by MazikUSA to VIP hereunder, and (ii) MazikUSA's maximum liability for direct damages of any kind arising out of this Agreement shall be limited to the total amount of royalties payable by MazikUSA to VIP hereunder.

18.    Ownership of Composite Product(s). Title to the Proprietary Rights embodied in the Composite Product(s) and in the Composite Product(s) Deliverables shall be the sole and exclusive property jointly owned by VIP and MazikUSA.

19.    Ownership of VIP Branding Features. Title to the Proprietary Rights embodied in VIP Branding Features shall remain in and be the sole and exclusive property of VIP. MazikUSA hereby acknowledges and agrees that (i) MazikUSA has no rights, title or interest in or to the VIP Branding Features, and (ii) all use of the VIP Branding Features shall inure to the benefit of VIP. MazikUSA shall not (i) apply for registration of the VIP Branding Features (or any marks or features confusingly similar thereto) anywhere in the world, (ii) alter, modify or change the VIP Branding Features in any manner, or (iii) use any of the VIP Branding Features, except as expressly authorized herein or by prior written approval of the owner thereof.

20.    Ownership of MazikUSA Branding Features. Title to the Proprietary Rights embodied in MazikUSA Branding Features shall remain in and be the sole and exclusive property of MazikUSA. VIP hereby acknowledges and agrees that (i) VIP has no rights, title or interest in or to the MazikUSA Branding Features, and (ii) all use of the MazikUSA Branding Features shall inure to the benefit of MazikUSA. VIP shall not (i) apply for registration of the MazikUSA Branding Features (or any marks or features confusingly similar thereto) anywhere in the world, (ii) alter, modify or change the MazikUSA Branding Features in any manner, or (iii) use any of the MazikUSA Branding Features, except as expressly authorized herein or by prior written approval of the owner thereof.

21.    Joint Ownership of End-User Registration Data. The parties agree that all Registration Data that end-users may convey during the registration process for the Composite Product(s) shall be jointly owned by MazikUSA and VIP. The parties agree that during the term hereof, each party shall establish privacy policies that (i) permit the collection of Registration Data, and (ii) the sharing of such Registration Data with the other party.

22.    Reciprocal Disclosure of Confidential Information. The parties anticipate that each may disclose confidential information to the other. Accordingly, the parties desire to establish in this Section terms governing the use and protection of certain information one party ("Owner") may disclose to the other party ("Recipient"). For purposes hereof, "Confidential Information" means the terms and conditions hereof, and other information of an Owner (i) which relates to Software Product(s), including business models and plans, and technical information and data of Owner or its customers or suppliers, or (ii) which, although not related to the Software Product(s), is nevertheless disclosed hereunder, and which, in any case, is disclosed by an Owner or an affiliate to Recipient in document or other tangible form bearing an appropriate legend indicating its confidential or proprietary nature, or which, if initially disclosed orally or visually is

identified as confidential at the time of disclosure and a written summary hereof, also marked with such a legend, is provided to Recipient within fifteen (15) days of the initial disclosure. Recipient may use Confidential Information of Owner only for the purposes of this Agreement and shall protect such Confidential Information from disclosure to others, using the same degree of care used to protect its own proprietary information of like importance, but in any case using no less than a reasonable degree of care. Recipient may disclose Confidential Information received hereunder only as reasonably required to perform its obligations under this Agreement and only to its employees who have a need to know for such purposes and who are bound by signed, written agreements to protect the received Confidential Information from unauthorized use and disclosure. The restrictions of this Agreement on use and disclosure of Confidential Information shall not apply to information that: (i) is in the possession or control of Recipient at the time of its disclosure hereunder; (ii) is, or becomes publicly known, through no wrongful act of Recipient; (iii) is received by Recipient from a third party free to disclose it without obligation to Owner; or (iv) is independently developed by Recipient without reference to Confidential Information.

23.    Confidentiality of Software Product(s). Notwithstanding the forgoing, specifically regarding the Software Product(s), both Parties acknowledge claim that their respective Software Product(s) source code embodies valuable trade secrets proprietary to each party. Accordingly, each Party shall maintain a high degree of care to protect the Software Product(s) source code from unauthorized access, disclosure, and use, including without limitation, the placement of any Proprietary Rights notice on the Software Product(s) that is reasonably requested by the parties. Neither party: (i) distribute, transfer, loan, rent, or provide access to the Software Product(s), except as provided herein; or (ii) remove or add any Proprietary Rights notice associated with the Software Product(s) without the express written permission of the other party.

24.    Injunctive Relief. The parties hereby agree that any breach of any provision of this Agreement regarding confidentiality or protection of Proprietary Rights would constitute irreparable harm, and that the aggrieved party shall be entitled to specific performance and/or injunctive relief in addition to other remedies at law or in equity.

25.    Term Of Agreement. The initial term of this Agreement shall commence as of the Effective Date hereof and shall continue for a period of ten (10) years. The initial term hereof shall automatically renew for successive one (1) year terms unless either party notifies the other in writing not less than ninety (90) days prior to the expiration of the current term of its intention not to renew. Both the initial term and any renewal term are subject to earlier termination as otherwise provided herein.

26.    Automatic Termination. Unless either party promptly after discovery of the relevant facts notifies the other party to the contrary in writing, this Agreement will terminate immediately without notice upon the institution of insolvency, bankruptcy, or similar proceedings by or against the other party, any assignment or attempted assignment by either party for the benefit of creditors, or any appointment, or application for such appointment, of a receiver for the party.
If a petition is filed in any court to declare the other party bankrupt or for a Reorganization of the other party under the bankruptcy laws or any similar statue and such petition is not dismissed in ninety (90) days or if a Trustee in bankruptcy or a Receiver or similar entity is appointed for one of the parties.

27.    Termination for Cause. Either party may terminate this Agreement and all rights granted herein for a material breach by the other party which remains uncured after ninety (90) days from receipt of written notice describing the nature of the breach.

28.    Effect of Expiration or Termination. Upon the expiration or termination hereof, both parties shall cease distributing Composite Product(s) and any derivative works based on the Composite Product(s). Notwithstanding anything to the contrary contained herein, sublicenses for all Composite Product(s) in any form, including any derivative works based on Composite Product(s), granted by a party prior to the expiration date or the effective date of termination of this Agreement shall remain in full force and effect following such dates.

29.    Arbitration. Except for actions to protect Proprietary Rights and to enforce an arbitrator's decision hereunder, all disputes, controversies, or claims arising out of or relating to this Agreement or a breach thereof shall be submitted to and finally resolved by arbitration under the rules of the American Arbitration Association ("AAA") then in effect. There shall be one arbitrator, and such arbitrator shall be chosen by mutual agreement of the parties in accordance with AAA rules. The arbitration shall take place in Orlando, FL. The arbitrator shall apply the laws of the State of Florida, to all issues in dispute. The findings of the arbitrator shall be final and binding on the parties, and may be entered in any court of competent jurisdiction for enforcement. Enforcements of any award or judgment shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Legal fees shall be awarded to the prevailing party in the arbitration.

30.    Notices. Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by email or facsimile (provided delivery is confirmed), or U.S. Mail (registered or certified only), return receipt requested, in each case to the address set forth on the initial page hereof or at such other addresses as shall be designated in writing by either party to the other in accordance with this Section. Such notice will be deemed to be given when received.

31.    Assignment. This Agreement is assignable by either party hereto with the consent of the other, not to be unreasonably withheld. This Agreement shall be assignable by MazikUSA or Virtual Impact Productions to an affiliate entity or upon the sale of the right to license and sublicense the Products to the purchaser of said right. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors. Neither party may delegate any work or obligation to be performed under this Agreement, without joint prior written consent. Any attempted assignment or delegation in contravention of this Section without consent shall be void and ineffective.

32.    Continuing Obligations. The following obligations shall survive the expiration or termination hereof: (i) any and all warranty disclaimers, limitations of liability and indemnities granted by either party herein, (ii) any covenant granted herein for the purpose of determining ownership of, or protecting, the Proprietary Rights, including without limitation, the confidential information of either party, or any remedy for breach thereof, and (iii) the payment of taxes, duties, or any money to parties hereunder.

33.    Joint Program Partnership. The relationship of the parties is that of Joint Program Partnership Agreement. MazikUSA is allowed to develop a .NET based solution, based

on Virtual Impact's current DIV specifications/source code and create a new product called "MazikUSA/Virtual Impact Learning Content Management System". Neither party has the authority to enter into any additional agreements of any kind on behalf of the other party and shall not have the power or authority to bind or obligate the other party in any manner to any third party.

34.     Force Majeure. Neither VIP nor MazikUSA shall be liable for damages for any delay or failure of delivery arising out of causes beyond their reasonable control and without their fault or negligence, including, but not limited to, Acts of God, acts of civil or military authority, fires, riots, wars, embargoes, or communications failures. Notwithstanding anything to the contrary contained herein, if either party is unable to perform hereunder for a period of sixty (60) consecutive days, then the other party may terminate this Agreement immediately without liability by ten (10) days written notice to the other.

35.     Miscellaneous. This Agreement shall be construed under the laws of the State of Florida, without regard to its principles of conflicts of law. This Agreement constitutes the entire understanding of the parties with respect to the subject matter of this Agreement and merges all prior communications, understandings, and agreements. This Agreement may be modified only by a written agreement signed by the parties. The failure of either party to enforce at any time any of the provisions hereof shall not be a waiver of such provision, or any other provision, or of the right of such party thereafter to enforce any provision hereof.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed below.


**Virtual Impact Productions, Inc.**


_____          Date:_____
Signature
By: Michelle Robinson, Founder


**MazikUSA, Inc.**


_____          Date:_____
Signature
By: Sid Siddiqui, Founder

# EXHIBIT A

## SOFTWARE PRODUCT(S) DESCRIPTION, BRANDING FEATURES AND PRICING

1.      Software Product(s). Virtual Impact Productions, Inc., has developed an ASP based Learning Management System and other productivity tools including rights to an industry patent to implement communication with parents in a Virtual environment.

MazikUSA and Virtual Impact will develop a .NET version of the current Virtual Impact DIV© program. This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly developed MazikUSA -Virtual Impact DIV will be equally owned by both companies, in the existing English language version.

2.      Software Product(s) Deliverable(s). VIP shall deliver to MazikUSA (i) a complete set of master copies of Software Product(s) recorded compact disc (CDs) in source code and object code form, (ii) one complete set of user documentation in digital form, and (iii) one copy of any programming tools and higher-level programming languages or environments (and related documentation) required to support the Software Product(s) that are not available on commercially reasonable terms on the open market of the existing English language version of the Software Product(s) for use to develop a .NET based solution based on Virtual Impact's current DIV©.

3.      Composite Product(s). Only the following MazikUSA product(s) and/or new functionality are authorized for integration and merger with the Software Product(s) to create Composite Products: (i) "MazikUSA/Virtual Impact Learning Content Management System". This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly developed MazikUSA -Virtual Impact DIV will be equally owned by both companies.

4.      Co-Branding For Composite Product(s).

    4.1     For purposes hereof, "Branding Features" shall mean the MazikUSA-Virtual Impact DIV logo to be incorporated into a splash screen at startup and into the About box of each Composite Product.

    4.2     For purposes hereof, "MazikUSA-Virtual Impact DIV Branding Features" shall mean the MazikUSA-Virtual Impact DIV logo and word mark to be incorporated (i) into a splash screen at startup and into the About box of each Composite Product, and (ii) otherwise on any MazikUSA or Virtual Impact web site page featuring the Composite Product(s).

5.      Distribution Royalties.

    5.1     Apportionment. Virtual Impact and MazikUSA will equally share in the gross income from the license of this newly developed MazikUSA-Virtual Impact DIV "Program".  All additional profits, minus employee cost, from the training, sales of 3rd party software, installation and other incomes derived from the "Program" will be shared equally, as well, between the two parties, with the exception of travel expenses to be

reimbursed to the traveling party. MazikUSA will also allow an option for Virtual Impact to offer training and installation to its clients.

5.2     Periodic Per Unit Royalty. MazikUSA and Virtual Impact will sell the license to this new "Program" to customers for $1295 per school, as suggested retail pricing. An additional discount may be offered to customers, as agreed between the parties. Virtual Impact and MazikUSA will divide the profits from the sale of MazikUSA-Virtual Impact DIV Program equally. For purposes hereof, this Composite Product shall be deemed to be "distributed" when a copy thereof is downloaded, transmitted electronically, shipped, distributed, or otherwise transferred to a third party or accessible by a third party.

5.3     Royalty Period and Payment. The periodic royalty is payable on a monthly basis not later than thirty (30) days from the close of each calendar month during the term hereof. If the initial period is a partial period, the periodic royalty shall be pro-rated for such period.

5.4     Reporting And Audit Rights. At the time of each royalty payment, the parties shall transmit to each other sales activities reports in the form of written and/or electronic files by email attachment. Each sales activity report shall include the number of sales and related revenue for all distributions during the royalty period broken down by channel or method of distribution. The parties shall keep all such records and supporting books, records, accounts, and logs, whether in electronic format or otherwise, for a period of at least three (3) years from the date of each transaction. Upon three (3) business days' advance written notice, the party or its agent shall have the right to examine during normal business hours at The Party's principal place of business, The Party's books, records, accounts, and logs, whether in electronic format or otherwise, to the extent that such examination is necessary and pertinent to support and verify The Party's sales activities reports required hereunder. If any audit reveals underpayment of five percent (5%) or greater in royalties payable, then that Party shall, in addition to promptly paying the underpayment, reimburse the other Party for all the costs and expenses of the audit.

# EXHIBIT B

## MARKETING AND SUPPORT OBLIGATIONS

1.     VIP's Obligations. VIP shall perform the following obligations at its cost and expense, unless otherwise indicated.

    1.1     Technical Contact. Within five (5) days of the Effective Date, VIP shall appoint and notify MazikUSA of its technical contact. VIP's technical contact shall coordinate all technical issues on behalf of VIP which arise out of this Agreement.

    1.2     Location of Services. All VIP services hereunder shall be performed at VIP's facilities or at the facilities of the VIP Site(s), unless otherwise agreed in writing by VIP.

    1.3     Technical Support. If MazikUSA has questions about the Software Product(s), MazikUSA may notify VIP by telephone or through VIP's designated electronic mail support address. VIP shall assign VIP support contacts to staff such support lines and electronic mail at least from 9:00 a.m. to 5:00 p.m., Eastern Time, Monday through Friday, excluding national holidays. VIP will use its best efforts to answer questions and correct reported errors that are reproducible and caused by VIP (or to provide suitable temporary solutions or workarounds for problems) during the initial response. If MazikUSA states that the reported error is substantial and material to MazikUSA's use of the Software Product(s), or that the reported error causes the Software Product(s) to be inoperable, VIP will use its best efforts to correct the error, within a commercially reasonable time after VIP's initial response.

    1.4     Deliverables. Promptly after the Effective Date, VIP shall transmit to MazikUSA all existing product specifications, source code, documentation in a form and format that is mutually agreeable between the parties, so that MazikUSA can properly develop the new "Program".

    1.6     Updates. VIP shall provide MazikUSA with reasonable prior notice of any Updates for the Software Product(s), and VIP shall provide master copies of such Updates to MazikUSA without additional charge.

    1.7     Co-Marketing.  VIP will co-market the new "Program" and increase awareness using marketing collateral, video, web, audio, and other mechanisms. Additionally VIP will inform existing and new customers of the availability of the new "Program".

    1.8     Enhancements.  VIP will continue building enhancements to the core product to ensure that the new "Program" is also keeping up with the technology and user process change.

2.     MazikUSA's Obligations. MazikUSA shall perform the following obligations at its cost and expense, unless otherwise indicated.

    2.1     Technical Contact. Within five (5) days of the Effective Date, MazikUSA shall appoint and notify VIP of its technical contact. MazikUSA's technical contact shall

coordinate all technical issues on behalf of MazikUSA which arise out of this Agreement, including without limitation, the obligations of MazikUSA specified in this Exhibit C.

2.2     Location os Services. All MazikUSA services hereunder shall be performed at VIP's facilities or at the facilities of the MazikUSA Site(s), unless otherwise agreed in writing by MazikUSA.

2.3     Technical Support. If VIP has questions about the Software Product(s), VIP may notify MazikUSA by telephone or through MazikUSA's designated electronic mail support address. MazikUSA shall assign MazikUSA support contacts to staff such support lines and electronic mail at least from 9:00 a.m. to 5:00 p.m., Eastern Time, Monday through Friday, excluding national holidays. MazikUSA will use its best efforts to answer questions and correct reported errors that are reproducible and caused by MazikUSA (or to provide suitable temporary solutions or workarounds for problems) during the initial response. If VIP states that the reported error is substantial and material to VIP's use of the Software Product(s), or that the reported error causes the Software Product(s) to be inoperable, MazikUSA will use its best efforts to correct the error, within a commercially reasonable time after MazikUSA's initial response. Additionally, Mazik will contract with VIP for the use of VIP's senior programmer during the integration process and reimburse VIP at VIP's usual and customary rates.

2.4     Co-market the newly developed "Program" with MazikUSA's SIS offering to the districts across the nation. Additionally MazikUSA will inform existing and new customers of the availability of the new "Program".

2.5     Fund and execute a market plan with partners to maximize Project revenue. Seek sales and business development opportunities for the new solution. Continually update Sales & Marketing Plan to reflect the alignment of market conditions.

2.6     Execute a detailed process to follow-up and close K-12 prospect and sales leads.

2.7     Registration of End-Users. During the term hereof, MazikUSA shall establish and maintain an online registration system for the Composite Product(s) suitable to capture Registration Data in digital form. MazikUSA shall transfer Registration Data to VIP in the form and format as mutually agreed between the parties and in accordance with a mutually agreed-upon schedule, but in no event less than monthly during the term hereof.

2.8     MazikUSA will grant exclusive contract to Virtual Impact to produce video and graphics for training and sales promotions for "Composite Product". MazikUSA will fund the development of this work. All sales proceeds from the sale of these "Composite Product" videos will be returned to MazikUSA until "Composite Product" expenditures have been matched. Once matched MazikUSA and Virtual Impact will equally share in the profit of these sales.

2.9     MazikUSA will grant exclusive contract to Virtual Impact to produce video and graphics for training and sales promotions for MazikUSA Products". MazikUSA will reimburse VIP at VIP's usual and customary rates. MazikUSA has the right to market VIP's video and graphic production to their partners and clients. VIP will pay MazikUSA a commision upon said sales, based upon the individual contract.

# EXHIBIT C

## SUBLICENSE TERMS

1.       Sublicense Terms For End-Users. The parties shall include terms and conditions substantially similar to the following (i) in terms of use to be incorporated into the parties web sites and/or (ii) (ii) a "shrink-wrapped" or "click-wrapped" license agreement that clearly notifies the end-user that the use of the Composite Product(s) subject to the agreement and permits the end-user to indicate assent either by opening the product package or by the clicking on a designated button or link.

   1.1       Sublicense And Restrictions. Each sublicense for Composite Product(s) shall grant non-exclusive rights for use and not for resale or distribution.

   1.2       Proprietary Rights Provisions: (i) an acknowledgment that although copyrighted, the Composite Product(s) embody valuable trade secrets proprietary to the parties and/or the parties suppliers, (ii) a covenant prohibiting disassembly and decompilation of the Composite Product(s), (iii) a covenant prohibiting the copying of the Composite Product(s), except for a reasonable number of back-up copies and as expressly authorized in the sublicense license grant, and (iv) a covenant prohibiting the end-user from providing access to the Composite Product(s) to any person for any purpose other than processing the end-user's internal data for the intended use of the Composite Product(s).

   1.3       Warranties. The parties shall not be authorized to grant any warranty binding the other party regarding the performance, condition, title, non-infringement, merchantability, fitness for a particular purpose, system integration, or data accuracy of the Composite Product(s). The parties shall disclaim all warranties implied by law as permitted by applicable law. If either party grants an express warranty binding the other party regarding the performance and/or condition of the Composite Product(s), such express warranty shall not exceed the scope of, or be inconsistent with, any express warranty given by the parties for the Software Product(s).

   1.4       Limitation of Liability. Both parties shall on behalf of itself and all of its suppliers and licensors, disclaim any and all liability for incidental and consequential damages as permitted by applicable law.

   1.5       U.S. GOVERNMENT END USERS. MazikUSA shall provide that the Composite Product(s) constitute a commercial item," as that term is defined in 48 C.F.R. 2.101 (Oct. 1995), consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (Sept. 1995). Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (June 1995), all U.S. Government end-users acquire the Software Product(s) with only those rights set forth herein.

2.       Sublicense Terms For Resellers. The parties shall include terms and conditions substantially similar to the following in written sublicense agreements, signed by a duly authorized representative of the Reseller.

2.1 Sublicense And Restrictions. Each sublicense shall (i) grant rights no greater in scope than the license rights provided herein, and (ii) provide licensing restrictions no less restrictive than those provided herein; provided, however, each Reseller shall be authorized to grant sublicenses only to end-users and not to other Resellers.

2.2 Proprietary Rights Provisions: (i) an acknowledgment that although copyrighted, the Composite Product(s) embody valuable trade secrets proprietary to the parties and/or the partie's suppliers, and (ii) a covenant prohibiting disassembly and decompilation of the Composite Product(s).

2.3 Warranties. The parties shall not be authorized to grant any warranty binding the other party regarding the performance, condition, title, non-infringement, merchantability, fitness for a particular purpose, system integration, or data accuracy of the Composite Product(s). Both parties shall disclaim all warranties implied by law as permitted by applicable law. If MazikUSA grants an express warranty binding MazikUSA regarding the performance and/or condition of the Composite Product(s), such express warranty shall not exceed the scope of, or be inconsistent with, any express warranty given by the parties for the Software Product(s).

2.4 Limitation of Liability. Both parties shall on behalf of itself and all of its suppliers and licensors disclaim any and all liability for incidental and consequential damages as permitted by applicable law.

2.5 U.S. GOVERNMENT END USERS. The parties shall require all Resellers to provide in all sublicenses for the Composite Product(s) that the Composite Product(s) constitute a "commercial item," as that term is defined in 48 C.F.R. 2.101 (Oct. 1995), consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (Sept. 1995). Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (June 1995), all U.S. Government end users acquire the Composite Product(s) with only those rights set forth herein.

Yellow-Deleted ▮▮▮▮- Added

# Joint Program Partnership Agreement

THIS AGREEMENT is entered into as of June 27, 2005 ("Effective Date"), by and between Virtual Impact Productions, Inc., a Florida corporation with its principal office located at 400 Golf Brook Circle #102, Longwood, FL 32779, Telephone: (321) 206-0372, Facsimile: (206) 206-3138, Contact and email: Robert Slider, robert@virtualed.org ("VIP"), and MazikUSA, Inc., an Illinois corporation with its principal office located at 2644 E. Dempster, Suite 213, Park Ridge, IL 60068, Telephone: 847-803-1046, Facsimile: 847-375-9251, Contact and email: Sid Siddiqui, sid@mazikusa.com ("MazikUSA").

WHEREAS, VIP has developed an ASP based Learning Content Management System Digital Interface Vehicle© (DIV) and other productivity tools including rights to an industry patent to implement communication with parents in a Virtual environment, "Software Products"; and

WHEREAS, the parties desire to enter in a joint partnership agreement to allow MazikUSA and VIP to develop a .NET software version of Virtual Impact's current DIV program. This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly developed product will be called "MazikUSA-Virtual Impact Learning Content Management System", and will be equally owned by both parties, and

WHEREAS, Virtual Impact will supply its current DIV© code, technical documentation and use of assignment on-line patent towards this newly developed "Program". In return, MazikUSA will fund and redesign this DIV code in .NET to link and interact with the MazikUSA SIS system, subject to the terms and conditions hereof;

WHEREAS, Virtual Impact is authorizing MazikUSA the use of Patent 6,505,031 as part of this newly developed MazikUSA-Virtual Impact DIV "Program". In addition, Virtual Impact authorizes MazikUSA to approach customers and/or vendors who may not be in compliance of the Patent and seek settlements. Proceeds of these settlements will be equally divided between Virtual Impact and MazikUSA for the duration of this agreement. All legal and incidental costs to be born by MazikUSA.

NOW, THEREFORE, in consideration of the foregoing, and in reliance on the mutual agreements contained herein, the parties agree as follows:

1. Definitions.

    1.1    "Software Product(s)." All computer programs and related documentation produced, owned, and/or licensed by VIP, in source code form, as specified on Exhibit A. Software Product(s) include any Updates provided by VIP hereunder.

    1.2    "Update." A release of the Software Product(s) that is developed and designated by VIP as a change in the tenths digit in the version number [x.(x).x].

    1.3    "Software Product(s) Deliverables." Those deliverables specified on Exhibit A.

    1.4    "Composite Product(s)." Software products produced by MazikUSA for

distribution hereunder that result from the integration and merger of MazikUSA products and/or code as specified on Exhibit A with Software Product(s) licensed and provided by VIP hereunder.

1.5 "Resellers." Companies or organizations that distribute software products to end-users.

1.6 "VIP Branding Features." VIP's proprietary trade names, service marks, trademarks, logos, and indicia of origin and other distinctive branding features as specified on Exhibit A.

1.7 "MazikUSA Branding Features." MazikUSA's proprietary trade names, service marks, trademarks, logos, and indicia of origin and other distinctive branding features as specified on Exhibit A.

1.8 "Proprietary Materials." Materials to be delivered by one party to the other, or used by a party in connection with the delivery of services or the Software Product(s), or for the performance of obligations hereunder.

1.9 "Registration Data." The following data records submitted by end-users of Composite Product(s) as part of the registration process: school or district, address, and email address.

1.10 "Proprietary Rights." Any and all rights, whether registered or unregistered, in and with respect to patents, copyrights, confidential information, know-how, trade secrets, moral rights, contract or licensing rights, confidential and proprietary information protected under contract or otherwise under law, trade names, domain names, trade dress, logos, animated characters, trademarks, service marks, and other similar rights or interests in intellectual or industrial property.

2. Derivative Works/Integration and Merger License And Restrictions. Subject to the terms and conditions hereof, including without limitation, Exhibit A attached, and only for term hereof, VIP hereby grants to MazikUSA to develop a .NET version solution based on Virtual Impact's current DIV specifications/source code and create a new product called "MazikUSA/Virtual Impact Learning Content Management System". (Composite Product)

3. Bundling/Compilation License And Restrictions. Subject to the terms and conditions hereof, and only for the term hereof, the new product will be sold as an add-on to the MazikUSA's solution and will utilize the On-line assignment Patent. It is understood by the parties, that this joint partnership will not be misconstrued in that Michelle Robinson or Robert Slider are giving up ownership in the Assignment Online Patent 6,505,031, and other Intellectual Property and/or MazikUSA is giving up ownership in their SIS Product and other Intellectual Property. Both companies will continue to own their current products, copyrights and registered patents, provided that the Composite Product(s) remain separate software offering ███████████████████ ████████████████████

4. Distribution License; Sublicenses; Restrictions. Subject to the terms and conditions hereof and only for the term hereof, VIP hereby grants to MazikUSA the right and license to use, publicly display, publish, and distribute the Composite Product(s) in

object code form only, together with authorized derivative works based thereon, on a standalone basis, and as part of bundled products and/or compilations with other works only as expressly authorized above, and only through the authorized distribution channel(s) specified below. MazikUSA is authorized to grant sublicenses only in conformity with the Sublicense Terms provided on Exhibit C.

5.     Authorized Distribution Channels. The distribution license granted above is granted both (i) for distribution to end-users located in The United States through a single tier of distribution consisting only of sales personnel with face-to-face contact with end-users, and (ii) for distribution through the Retail Channels consisting of Resellers located in The United States.

6.     Co-Branding Requirements; Branding License. MazikUSA shall incorporate VIP Branding Features and designated copyright notice as specified by VIP into the Composite Product(s), and MazikUSA is authorized to incorporate VIP Branding Features in its discretion into MazikUSA web pages that feature Composite Product(s) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ All distribution rights and licenses granted herein for Composite Product(s) are subject to the forgoing co-branding requirements. Subject to the terms and conditions hereof, and only for the term hereof, VIP hereby grants to MazikUSA the non-exclusive, worldwide right and license to publicly display VIP Branding Features on Composite Product(s) and on MazikUSA web pages for purposes of promoting, marketing ▓▓▓▓▓▓ Composite Product(s).

7.     Limited Exclusive License. The license granted herein is exclusive in that VIP represents that VIP has not granted, nor will VIP during the term hereof, grant to another MazikUSA competing integration and merger rights for Software Product(s) that are competitive with Composite Product(s). VIP reserves the right to market the Software Product(s) itself, without limitation.

8.     Exclusive Dealing Restriction. During the term hereof, neither party shall distribute, or act as an agent or representative of any developer, publisher, or manufacturer, of software programs that are functionally comparable or intended, by applicable marketing and promotional programs directed to such products, to compete directly with the Software Product(s). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9.     Irrevocable Agreement. This Agreement is irrevocable, and the parties may not terminate this Agreement by reason of a parties material breach ▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ provided, however, that in no event shall this provision be construed to nullify any other remedy available to the parties for a material breach by a party that is expressly provided herein or otherwise available at law or in equity.

10.     Export. Software Product(s), including associated technical data, are subject to United States export control laws, and may be subject to export or import regulation in other countries. The parties agree to comply strictly with all such regulations, and acknowledges that it has the responsibility to obtain such licenses to export, re-export, or import Composite Product(s). The parties shall, at its own expense, obtain and arrange for the maintenance in full force and effect of all governmental approvals, consents, licenses, authorizations, declarations, filings and registrations as may be necessary or

advisable for the performance of the terms and conditions of this Agreement, including without limitation, fair trade approvals.

11.   Reservation of Rights. All rights not expressly granted to MazikUSA ███ herein are expressly reserved by VIP ███████.

12.   Marketing And Support Obligations. Each party shall perform the marketing and support obligations in accordance with Exhibit B attached.

13.   Royalties. MazikUSA and VIP shall pay to the other in accordance with Exhibit A attached.

14.   Representations and Warranties; Indemnities. Each of the parties represents and warrants to the other that: (i) each party has full legal right, power and authority to enter into and perform this Agreement (including all Exhibits hereto); (ii) the Software Product(s), Proprietary Materials and any branding features of either party specified herein do not infringe or misappropriate any Proprietary Right of any third party, or constitute defamation, invasion of privacy, or violate the privacy rights of any third party; (iii) all Proprietary Rights or other rights in the Software Product(s), Proprietary Materials and any branding features of either party specified herein are either owned by the providing party or are properly sublicensed from third parties granting such party the right to use same as contemplated hereunder; (iv) regarding the collection and use of end-user data, each of the parties represents and warrants to the other that neither party shall violate any rights of any person or entity, including, without limitation, rights of publicity, privacy or personality; and (v) any and all sublicenses granted by MazikUSA in connection with the Composite Product(s) shall be in compliance with the Sublicense Terms provided on Exhibit C. Each party shall defend, indemnify and hold harmless the other, its affiliates, successors, assigns, officers, directors, and employees from and against any and all claims, costs, damages, losses, liabilities, actions, recoveries, judgments and expenses (including actual attorneys' fees and expenses regardless of whether litigation was commenced) arising out of or in connection with a breach/untruth of any express representation and warranty made above in this Section (a "Claim"), provided that: (i) the indemnified party promptly notifies the indemnifying party in writing of the claim promptly upon the indemnified party becoming aware of such Claim; (ii) the indemnifying party shall have exclusive control of the settlement or defense of any action to which the Claim relates; and (iii) the indemnified party cooperates with the indemnifying party in every reasonable way to facilitate such defense or settlement. Once given notice of such Claim, if the indemnifying party does not defend any such Claim, the indemnified party may take any of the above actions and shall be fully indemnified by the indemnifying party.

15.   Warranty Disclaimers. EXCEPT AS EXPRESSLY SET FORTH ABOVE, TO THE EXTENT ALLOWED BY LAW, EACH PARTY ON BEHALF OF ITSELF AND ITS SUPPLIERS HEREBY DISCLAIMS ALL WARRANTIES, BOTH EXPRESS AND IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SYSTEM INTEGRATION, AND DATA ACCURACY. EACH PARTY ACKNOWLEDGES THAT IT HAS NOT RELIED ON ANY REPRESENTATION THAT IS NOT EXPRESSLY SET OUT HEREIN.

16.   Disclaimer of Incidental and Consequential Damages. EXCEPT FOR

Confidential
Virtual Impact Productions, Inc.
062005

4

Yellow-Deleted    Added

INDEMNIFICATION OBLIGATIONS ESPRESSLY PROVIDED HEREIN, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER UNDER ANY THEORY INCLUDING CONTRACT AND TORT (INCLUDING NEGLIGENCE AND STRICT PRODUCTS LIABILITY) FOR ANY INDIRECT, SPECIAL OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, EVEN IF THE PARTY CAUSING SUCH DAMAGES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

17.    Limitation of Liability For Direct Damages. Except for indemnification obligations expressly provided herein, the liability of the parties for direct damages shall be as follows; (i) VIP's maximum liability for direct damages of any kind arising out of this Agreement shall be limited to the total amount of royalties paid by MazikUSA to VIP hereunder, and (ii) MazikUSA's maximum liability for direct damages of any kind arising out of this Agreement shall be limited to the total amount of royalties payable by MazikUSA to VIP hereunder.

18.    Ownership of Composite Product(s). Title to the Proprietary Rights embodied in the Composite Product(s) and in the Composite Product(s) Deliverables shall be the sole and exclusive property jointly owned by VIP and MazikUSA.

19.    Ownership of VIP Branding Features. Title to the Proprietary Rights embodied in VIP Branding Features shall remain in and be the sole and exclusive property of VIP. MazikUSA hereby acknowledges and agrees that (i) MazikUSA has no rights, title or interest in or to the VIP Branding Features, and (ii) all use of the VIP Branding Features shall inure to the benefit of VIP. MazikUSA shall not (i) apply for registration of the VIP Branding Features (or any marks or features confusingly similar thereto) anywhere in the world, (ii) alter, modify or change the VIP Branding Features in any manner, or (iii) use any of the VIP Branding Features, except as expressly authorized herein or by prior written approval of the owner thereof.

20.    Ownership of MazikUSA Branding Features. Title to the Proprietary Rights embodied in MazikUSA Branding Features shall remain in and be the sole and exclusive property of MazikUSA. VIP hereby acknowledges and agrees that (i) VIP has no rights, title or interest in or to the MazikUSA Branding Features, and (ii) all use of the MazikUSA Branding Features shall inure to the benefit of MazikUSA. VIP shall not (i) apply for registration of the MazikUSA Branding Features (or any marks or features confusingly similar thereto) anywhere in the world, (ii) alter, modify or change the MazikUSA Branding Features in any manner, or (iii) use any of the MazikUSA Branding Features, except as expressly authorized herein or by prior written approval of the owner thereof.

21.    Joint Ownership of End-User Registration Data. The parties agree that all Registration Data that end-users may convey during the registration process for the Composite Product(s) shall be jointly owned by MazikUSA and VIP. The parties agree that during the term hereof, each party shall establish privacy policies that (i) permit the collection of Registration Data, and (ii) the sharing of such Registration Data with the other party.

22.    Reciprocal Disclosure of Confidential Information. The parties anticipate that each may disclose confidential information to the other. Accordingly, the parties desire to

establish in this Section terms governing the use and protection of certain information one party ("Owner") may disclose to the other party ("Recipient"). For purposes hereof, "Confidential Information" means the terms and conditions hereof, and other information of an Owner (i) which relates to Software Product(s), including business models and plans, and technical information and data of Owner or its customers or suppliers, or (ii) which, although not related to the Software Product(s), is nevertheless disclosed hereunder, and which, in any case, is disclosed by an Owner or an affiliate to Recipient in document or other tangible form bearing an appropriate legend indicating its confidential or proprietary nature, or which, if initially disclosed orally or visually is identified as confidential at the time of disclosure and a written summary hereof, also marked with such a legend, is provided to Recipient within fifteen (15) days of the initial disclosure. Recipient may use Confidential Information of Owner only for the purposes of this Agreement and shall protect such Confidential Information from disclosure to others, using the same degree of care used to protect its own proprietary information of like importance, but in any case using no less than a reasonable degree of care. Recipient may disclose Confidential Information received hereunder only as reasonably required to perform its obligations under this Agreement and only to its employees who have a need to know for such purposes and who are bound by signed, written agreements to protect the received Confidential Information from unauthorized use and disclosure. The restrictions of this Agreement on use and disclosure of Confidential Information shall not apply to information that: (i) is in the possession or control of Recipient at the time of its disclosure hereunder; (ii) is, or becomes publicly known, through no wrongful act of Recipient; (iii) is received by Recipient from a third party free to disclose it without obligation to Owner; or (iv) is independently developed by Recipient without reference to Confidential Information.  This section shall survive termination for any reason.

23.    Confidentiality of Software Product(s). Notwithstanding the forgoing, specifically regarding the Software Product(s), both Parties acknowledge claim that their respective Software Product(s) source code embodies valuable trade secrets proprietary to each party. Accordingly, each Party shall maintain a high degree of care to protect the Software Product(s) source code from unauthorized access, disclosure, and use, including without limitation, the placement of any Proprietary Rights notice on the Software Product(s) that is reasonably requested by the parties. Neither party: (i) distribute, transfer, loan, rent, or provide access to the Software Product(s), except as provided herein; or (ii) remove or add any Proprietary Rights notice associated with the Software Product(s) without the express written permission of the other party.  ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24.    Injunctive Relief. The parties hereby agree that any breach of any provision of this Agreement regarding confidentiality or protection of Proprietary Rights would constitute irreparable harm, and that the aggrieved party shall be entitled to specific performance and/or injunctive relief in addition to other remedies at law or in equity.

25.    Term Of Agreement. The initial term of this Agreement shall commence as of the Effective Date hereof and shall continue for a period of ten (10) years. The initial term hereof shall automatically renew for successive one (1) year terms unless either party notifies the other in writing not less than ninety (90) days prior to the expiration of the current term of its intention not to renew. Both the initial term and any renewal term are subject to earlier termination as otherwise provided herein.

26.    Automatic Termination. Unless either party promptly after discovery of the

relevant facts notifies the other party to the contrary in writing, this Agreement will terminate immediately without notice upon the institution of insolvency, bankruptcy, or similar proceedings by or against the other party, any assignment or attempted assignment by either party for the benefit of creditors, or any appointment, or application for such appointment, of a receiver for the party.

If a petition is filed in any court to declare the other party bankrupt or for a Reorganization of the other party under the bankruptcy laws or any similar statue and such petition is not dismissed in ninety (90) days or if a Trustee in bankruptcy or a Receiver or similar entity is appointed for one of the parties.

27. Termination for Cause. Either party may terminate this Agreement and all rights granted herein for a material breach by the other party which remains uncured after ninety (90) days from receipt of written notice describing the nature of the breach.

28. Effect of Expiration or Termination. Upon the expiration or termination hereof, both parties shall cease distributing Composite Product(s) and any derivative works based on the Composite Product(s). Notwithstanding anything to the contrary contained herein, sublicenses for all Composite Product(s) in any form, including any derivative works based on Composite Product(s), granted by a party prior to the expiration date or the effective date of termination of this Agreement shall remain in full force and effect following such dates.

29. Arbitration. Except for actions to protect Proprietary Rights and to enforce an arbitrator's decision hereunder, all disputes, controversies, or claims arising out of or relating to this Agreement or a breach thereof shall be submitted to and finally resolved by arbitration under the rules of the American Arbitration Association ("AAA") then in effect. There shall be one arbitrator, and such arbitrator shall be chosen by mutual agreement of the parties in accordance with AAA rules. The arbitration shall take place in Orlando, FL. The arbitrator shall apply the laws of the State of Florida, to all issues in dispute. The findings of the arbitrator shall be final and binding on the parties, and may be entered in any court of competent jurisdiction for enforcement. Enforcements of any award or judgment shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Legal fees shall be awarded to the prevailing party in the arbitration.

30. Notices. Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by email or facsimile (provided delivery is confirmed), or U.S. Mail (registered or certified only), return receipt requested, in each case to the address set forth on the initial page hereof or at such other addresses as shall be designated in writing by either party to the other in accordance with this Section. Such notice will be deemed to be given when received.

31. Assignment. This Agreement is assignable by either party hereto with the consent of the other, not to be unreasonably withheld. This Agreement shall be assignable by MazikUSA or Virtual Impact Productions to an affiliate entity or upon the sale of the right to license and sublicense the Products to the purchaser of said right. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors. Neither party may delegate any work or obligation to be performed under this Agreement, without joint prior written consent. Any attempted assignment or delegation in contravention of this Section without consent shall be void and ineffective.

32.   **Continuing Obligations.** The following obligations shall survive the expiration or termination hereof: (i) any and all warranty disclaimers, limitations of liability and indemnities granted by either party herein, (ii) any covenant granted herein for the purpose of determining ownership of, or protecting, the Proprietary Rights, including without limitation, the confidential information of either party, or any remedy for breach thereof, and (iii) the payment of taxes, duties, or any money to parties hereunder.

33.   **Joint Program Partnership.** The relationship of the parties is that of Joint Program Partnership Agreement ▮▮▮▮▮▮▮▮ MazikUSA ▮▮ develop a .NET based solution, based on Virtual Impact's current DIV specifications/source code and create a new product called "MazikUSA/Virtual Impact Learning Content Management System". Neither party has the authority to enter into any additional agreements of any kind on behalf of the other party and shall not have the power or authority to bind or obligate the other party in any manner to any third party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

34.   **Force Majeure.** Neither VIP nor MazikUSA shall be liable for damages for any delay or failure of delivery arising out of causes beyond their reasonable control and without their fault or negligence, including, but not limited to, Acts of God, acts of civil or military authority, fires, riots, wars, embargoes, or communications failures. Notwithstanding anything to the contrary contained herein, if either party is unable to perform hereunder for a period of sixty (60) consecutive days, then the other party may terminate this Agreement immediately without liability by ten (10) days written notice to the other.

35.   **Miscellaneous.** This Agreement shall be construed under the laws of the State of Florida, without regard to its principles of conflicts of law. This Agreement constitutes the entire understanding of the parties with respect to the subject matter of this Agreement and merges all prior communications, understandings, and agreements. This Agreement may be modified only by a written agreement signed by the parties. The failure of either party to enforce at any time any of the provisions hereof shall not be a waiver of such provision, or any other provision, or of the right of such party thereafter to enforce any provision hereof.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed below.

**Virtual Impact Productions, Inc.**

_____     Date:_____
Signature
By: Michelle Robinson, Founder

**MazikUSA, Inc.**

_____     Date:_____

Signature
By: Sid Siddiqui, Founder

# EXHIBIT A

## SOFTWARE PRODUCT(S) DESCRIPTION, BRANDING FEATURES AND PRICING

1.      Software Product(s). Virtual Impact Productions, Inc., has developed an ASP based Learning Management System and other productivity tools including rights to an industry patent to implement communication with parents in a Virtual environment.

MazikUSA and Virtual Impact will develop a .NET version of the current Virtual Impact DIV© program. This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly developed MazikUSA -Virtual Impact DIV will be equally owned by both companies, in the existing English language version.

2.      Software Product(s) Deliverable(s). VIP shall deliver to MazikUSA (i) a complete set of master copies of Software Product(s) recorded compact disc (CDs) in source code and object code form, (ii) one complete set of user documentation in digital form, and (iii) one copy of any programming tools and higher-level programming languages or environments (and related documentation) required to support the Software Product(s) that are not available on commercially reasonable terms on the open market of the existing English language version of the Software Product(s) for use to develop a .NET based solution based on Virtual Impact's current DIV©.

3.      Composite Product(s). Only the following MazikUSA product(s) and/or new functionality are authorized for integration and merger with the Software Product(s) to create Composite Products: (i) "MazikUSA/Virtual Impact Learning Content Management System". This Program will be designed to work exclusively with the MazikUSA Solution offering. The newly developed MazikUSA -Virtual Impact DIV will be equally owned by both companies.

4.      Co-Branding For Composite Product(s).

      4.1      For purposes hereof, "Branding Features" shall mean the MazikUSA-Virtual Impact DIV logo to be incorporated into a splash screen at startup and into the About box of each Composite Product.

      4.2      For purposes hereof, "MazikUSA-Virtual Impact DIV Branding Features" shall mean the MazikUSA-Virtual Impact DIV logo and word mark to be incorporated (i) into a splash screen at startup and into the About box of each Composite Product, and (ii) otherwise on any MazikUSA or Virtual Impact web site page featuring the Composite Product(s).

5.      Distribution Royalties.

      5.1      Apportionment. Virtual Impact and MazikUSA will equally share in the gross income from the license of this newly developed MazikUSA-Virtual Impact DIV "Program". All additional profits, minus employee cost, from the training, sales of 3rd party software, installation and other incomes derived from the "Program" will be shared equally, as well, between the two parties, with the exception of travel expenses to be

Confidential
Virtual Impact Productions, Inc.
062005

reimbursed to the traveling party. MazikUSA will also allow an option for Virtual Impact to offer training and installation to its clients.



5.2    Periodic Per Unit Royalty. MazikUSA and Virtual Impact will sell the license to this new "Program" to customers for $1295 per school, as suggested retail pricing. An additional discount may be offered to customers, as agreed between the parties. Virtual Impact and MazikUSA will divide the profits from the sale of MazikUSA-Virtual Impact DIV Program equally. For purposes hereof, this Composite Product shall be deemed to be "distributed" when a copy thereof is downloaded, transmitted electronically, shipped, distributed, or otherwise transferred to a third party or accessible by a third party.

5.3    Royalty Period and Payment. The periodic royalty is payable on a monthly basis not later than thirty (30) days from the close of each calendar month during the term hereof ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If the initial period is a partial period, the periodic royalty shall be pro-rated for such period.

5.4    Reporting And Audit Rights. At the time of each royalty payment, the parties shall transmit to each other sales activities reports in the form of written and/or electronic files by email attachment. Each sales activity report shall include the number of sales and related revenue for all distributions during the royalty period broken down by channel or method of distribution. The parties shall keep all such records and supporting books, records, accounts, and logs, whether in electronic format or otherwise, for a period of at least three (3) years from the date of each transaction. Upon three (3) business days' advance written notice, the party or its agent shall have the right to examine during normal business hours at The Party's principal place of business, The Party's books, records, accounts, and logs, whether in electronic format or otherwise, to the extent that such examination is necessary and pertinent to support and verify The Party's sales activities reports required hereunder. If any audit reveals underpayment of five percent (5%) or greater in royalties payable, then that Party shall, in addition to promptly paying the underpayment, reimburse the other Party for all the costs and expenses of the audit.

# EXHIBIT B

## MARKETING AND SUPPORT OBLIGATIONS

1.      VIP's Obligations. VIP shall perform the following obligations at its cost and expense, unless otherwise indicated.

1.1     Technical Contact. Within five (5) days of the Effective Date, VIP shall appoint and notify MazikUSA of its technical contact. VIP's technical contact shall coordinate all technical issues on behalf of VIP which arise out of this Agreement.

1.2     Location of Services. All VIP services hereunder shall be performed at VIP's facilities or at the facilities of the VIP Site(s), unless otherwise agreed in writing by VIP.

1.3     Technical Support. If MazikUSA has questions about the Software Product(s), MazikUSA may notify VIP by telephone or through VIP's designated electronic mail support address. VIP shall assign VIP support contacts to staff such support lines and electronic mail at least from 9:00 a.m. to 5:00 p.m., Eastern Time, Monday through Friday, excluding national holidays. VIP will use its best efforts to answer questions and correct reported errors that are reproducible and caused by VIP (or to provide suitable temporary solutions or workarounds for problems) during the initial response. If MazikUSA states that the reported error is substantial and material to MazikUSA's use of the Software Product(s), or that the reported error causes the Software Product(s) to be inoperable, VIP will use its best efforts to correct the error, within a commercially reasonable time after VIP's initial response.

1.4     Deliverables. Promptly after the Effective Date, VIP shall transmit to MazikUSA all existing product specifications, source code, documentation in a form and format that is mutually agreeable between the parties, so that MazikUSA can properly develop the new "Program".

1.6     Updates. VIP shall provide MazikUSA with reasonable prior notice of any Updates for the Software Product(s), and VIP shall provide master copies of such Updates to MazikUSA without additional charge.

1.7     Co-Marketing.  VIP will co-market the new "Program" and increase awareness using marketing collateral, video, web, audio, and other mechanisms. Additionally VIP will inform existing and new customers of the availability of the new "Program".

1.8     Enhancements.  VIP will continue building enhancements to the core product to ensure that the new "Program" is also keeping up with the technology and user process change.

2.      MazikUSA's Obligations. MazikUSA shall perform the following obligations at its cost and expense, unless otherwise indicated.

2.1     Technical Contact. Within five (5) days of the Effective Date, MazikUSA shall appoint and notify VIP of its technical contact. MazikUSA's technical contact shall

coordinate all technical issues on behalf of MazikUSA which arise out of this Agreement, including without limitation, the obligations of MazikUSA specified in this Exhibit C.

2.2      Location os Services. All MazikUSA services hereunder shall be performed at VIP's facilities or at the facilities of the MazikUSA Site(s), unless otherwise agreed in writing by MazikUSA.

2.3      Technical Support. If VIP has questions about the Software Product(s), VIP may notify MazikUSA by telephone or through MazikUSA's designated electronic mail support address. MazikUSA shall assign MazikUSA support contacts to staff such support lines and electronic mail at least from 9:00 a.m. to 5:00 p.m., Eastern Time, Monday through Friday, excluding national holidays. MazikUSA will use its best efforts to answer questions and correct reported errors that are reproducible and caused by MazikUSA (or to provide suitable temporary solutions or workarounds for problems) during the initial response. If VIP states that the reported error is substantial and material to VIP's use of the Software Product(s), or that the reported error causes the Software Product(s) to be inoperable, MazikUSA will use its best efforts to correct the error, within a commercially reasonable time after MazikUSA's initial response. Additionally, Mazik will contract with VIP for the use of VIP's senior programmer during the integration process and reimburse VIP at VIP's usual and customary rates.

2.4      Co-market the newly developed "Program" with MazikUSA's SIS offering to the districts across the nation. Additionally MazikUSA will inform existing and new customers of the availability of the new "Program".

2.5      Fund and execute a market plan with partners to maximize Project revenue. Seek sales and business development opportunities for the new solution. Continually update Sales & Marketing Plan to reflect the alignment of market conditions.

2.6      Execute a detailed process to follow-up and close K-12 prospect and sales leads.

2.7      Registration of End-Users. During the term hereof, MazikUSA shall establish and maintain an online registration system for the Composite Product(s) suitable to capture Registration Data in digital form. MazikUSA shall transfer Registration Data to VIP in the form and format as mutually agreed between the parties and in accordance with a mutually agreed-upon schedule, but in no event less than monthly during the term hereof.

2.8      MazikUSA      will grant  exclusive contract to Virtual Impact to produce video and graphics for training and sales promotions for "Composite Product". MazikUSA will fund the development of this work. All sales proceeds from the sale of these "Composite Product" videos will be returned to MazikUSA until "Composite Product" expenditures have been matched.  Once matched MazikUSA and Virtual Impact will equally share in the profit of these sales.

2.9      MazikUSA will                      grant exclusive a contract to Virtual Impact to produce video and graphics for training and sales promotions for MazikUSA Products".  MazikUSA will reimburse VIP at VIP's usual and customary rates. MazikUSA has the right to market VIP's video and graphic production to their partners and clients. VIP will pay MazikUSA a commision upon said sales, based upon the individual contract.

# EXHIBIT C

## SUBLICENSE TERMS

1.     **Sublicense Terms For End-Users.** The parties shall include terms and conditions substantially similar to the following (i) in terms of use to be incorporated into the parties web sites and/or (ii) (ii) a "shrink-wrapped" or "click-wrapped" license agreement that clearly notifies the end-user that the use of the Composite Product(s) subject to the agreement and permits the end-user to indicate assent either by opening the product package or by the clicking on a designated button or link.

    1.1     **Sublicense And Restrictions.** Each sublicense for Composite Product(s) shall grant non-exclusive rights for use and not for resale or distribution.

    1.2     **Proprietary Rights Provisions:** (i) an acknowledgment that although copyrighted, the Composite Product(s) embody valuable trade secrets proprietary to the parties and/or the parties suppliers, (ii) a covenant prohibiting disassembly and decompilation of the Composite Product(s), (iii) a covenant prohibiting the copying of the Composite Product(s), except for a reasonable number of back-up copies and as expressly authorized in the sublicense license grant, and (iv) a covenant prohibiting the end-user from providing access to the Composite Product(s) to any person for any purpose other than processing the end-user's internal data for the intended use of the Composite Product(s).

    1.3     **Warranties.** The parties shall not be authorized to grant any warranty binding the other party regarding the performance, condition, title, non-infringement, merchantability, fitness for a particular purpose, system integration, or data accuracy of the Composite Product(s). The parties shall disclaim all warranties implied by law as permitted by applicable law. If either party grants an express warranty binding the other party regarding the performance and/or condition of the Composite Product(s), such express warranty shall not exceed the scope of, or be inconsistent with, any express warranty given by the parties for the Software Product(s).

    1.4     **Limitation of Liability.** Both parties shall on behalf of itself and all of its suppliers and licensors, disclaim any and all liability for incidental and consequential damages as permitted by applicable law.

    1.5     **U.S. GOVERNMENT END USERS.** MazikUSA shall provide that the Composite Product(s) constitute a commercial item," as that term is defined in 48 C.F.R. 2.101 (Oct. 1995), consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (Sept. 1995). Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (June 1995), all U.S. Government end-users acquire the Software Product(s) with only those rights set forth herein.

2.     **Sublicense Terms For Resellers.** The parties shall include terms and conditions substantially similar to the following in written sublicense agreements, signed by a duly authorized representative of the Reseller.

Confidential
Virtual Impact Productions, Inc.
062005

14

Yellow Deleted   ████ Added

2.1     Sublicense And Restrictions. Each sublicense shall (i) grant rights no greater in scope than the license rights provided herein, and (ii) provide licensing restrictions no less restrictive than those provided herein; provided, however, each Reseller shall be authorized to grant sublicenses only to end-users and not to other Resellers.

2.2     Proprietary Rights Provisions: (i) an acknowledgment that although copyrighted, the Composite Product(s) embody valuable trade secrets proprietary to the parties and/or the partie's suppliers, and (ii) a covenant prohibiting disassembly and decompilation of the Composite Product(s).

2.3     Warranties. The parties shall not be authorized to grant any warranty binding the other party regarding the performance, condition, title, non-infringement, merchantability, fitness for a particular purpose, system integration, or data accuracy of the Composite Product(s). Both parties shall disclaim all warranties implied by law as permitted by applicable law. If MazikUSA grants an express warranty binding MazikUSA regarding the performance and/or condition of the Composite Product(s), such express warranty shall not exceed the scope of, or be inconsistent with, any express warranty given by the parties for the Software Product(s).

2.4     Limitation of Liability. Both parties shall on behalf of itself and all of its suppliers and licensors disclaim any and all liability for incidental and consequential damages as permitted by applicable law.

2.5     U.S. GOVERNMENT END USERS. The parties shall require all Resellers to provide in all sublicenses for the Composite Product(s) that the Composite Product(s) constitute a "commercial item," as that term is defined in 48 C.F.R. 2.101 (Oct. 1995), consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (Sept. 1995). Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (June 1995), all U.S. Government end users acquire the Composite Product(s) with only those rights set forth herein.

# Exhibit F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYLER TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3-06-cv-1693-P |
| | § | ECF |
| VIRTUAL IMPACT PRODUCTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Tyler Technologies, Inc. ("Tyler") files this First Amended Complaint against Defendants, Virtual Impact Productions, Inc. ("VIP"), Robert Slider, and Michele Robinson, and for its causes of action would show the Court the matters set forth below.

### The Parties

1.     Plaintiff Tyler is a corporation formed under the laws of the State of Delaware, with its principal place of business located at 5949 Sherry Lane, Suite 1400, Dallas, Texas 75225.

2.     Defendant VIP is a Florida corporation having a principal place of business at 607 St. Andrews Drive, Sarasota, Florida 34243.

3.     Defendant Robert Slider ("Slider") is an individual.  Slider resides in the state of Florida and may be served with process by serving him in person at 607 St. Andrews Drive, Sarasota, Florida 34243, or wherever else he may be found.

4.     Michele Robinson ("Robinson") is an individual.  Robinson resides in the state of Florida and may be served with process by serving her in person at 607 St. Andrews Drive, Sarasota, Florida 34243, or wherever else she may be found.

## Jurisdiction and Venue

5.       This case is an action for declaratory judgment pursuant to Title 28, United States Code, § § 2201-2202 and Title 35, United States Code, § 101 *et seq.*, as to non-infringement of alleged patent rights and an action for declaratory judgment for related state law causes of action, some of which necessarily depend on resolution of a substantial question of federal patent law. In addition, the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of different States.   In sum, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § § 1331, 1332, 1338, 2201, and, to the extent necessary, 1367.

6.       Venue is proper within this judicial district and division under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

## Background Facts

7.       Tyler designs, develops and markets software products for use by local governments.

8.       Tyler received a letter dated September 7, 2006, a copy of which is attached hereto as Exhibit "A" and is incorporated herein by reference for all purposes.  Exhibit A accuses Tyler of infringing U.S. Patent No. 6,505,031 (the "'031 Patent") for a "virtual school environment" by "aggressively marketing the proprietary technology Virtual." Exhibit A at 1.

9.       Until recently, VIP claimed and admitted that it owned the '031 Patent.  Slider and Robinson now allege ownership of the '031 Patent.

10.       Slider and Robinson are officers and/or directors of VIP.  On information and belief, Slider and Robinson are the majority shareholders of VIP.

11.     On information and belief, VIP owns the '031 Patent.

12.     In the alternative, VIP and/or Robinson and/or Slider own the '031 Patent.

13.     Exhibit A asserts that "Tyler has severely damaged the patent of Virtual" through Tyler's application of the virtual school environment "as is protected in United States Patent **6,505,031**." Exhibit A at 2 (emphasis in original). Exhibit A alleges that the patent owner "is damaged because [the patent owner] cannot exclusively market its patent." *Id.* Exhibit A also states that the patent owner will suffer "negative tax consequences in the loss of exclusivity of the patent to Virtual." *Id.*

### Request For Declaratory Judgment

14.     By virtue of VIP, Slider and/or Robinson's actions, including misrepresentations concerning ownership of the '031 Patent, an actual controversy exists between the parties regarding ownership and/or control of the '031 Patent.

15.     Tyler requests a declaration that VIP is the effective owner of the '031 Patent for the purposes of this litigation.

16.     Tyler requests a declaration that Robinson and/or Slider be held individually liable for the acts and obligations of VIP.

17.     By virtue of VIP, Slider and/or Robinson's actions, including threats of litigation, accusations of infringement, and allegations of damages suffered, a reasonable apprehension exists on Tyler's behalf that Tyler will be wrongfully sued for infringement of the '031 Patent. An actual controversy therefore exists between the parties with respect to whether Tyler's actions, if any, infringe any valid claim of the '031 Patent.

18.     Tyler requests a declaration that the '031 Patent is invalid.

015789.00013:991452.02

19.     Tyler requests a declaration that its actions do not infringe any valid claim of the '031 Patent.

20.     By virtue of VIP, Slider and/or Robinson's actions, including threats of litigation, accusations of unspecified contract and/or tort violations, and allegations of damages suffered, a reasonable apprehension exists on Tyler's behalf that Tyler will be wrongfully sued.  An actual controversy therefore exists between the parties.

21.     Tyler requests a declaration that it has not damaged VIP, Slider and/or Robinson by any state law cause of action.

**Prayer**

**WHEREFORE**, Tyler prays:

(a)     that the Court declare the '031 Patent invalid;

(b)     that the Court declare that Tyler's actions do not infringe the '031 Patent;

(c)     that the Court declare VIP the effective owner of the '031 Patent for the purposes of this litigation;

(d)     that the Court declare that Robinson is individually liable for the acts and obligations of VIP;

(e)     that the Court declare that Slider is individually liable for the acts and obligations of VIP;

(f)     that the Court declare that Tyler's actions do not support any state law causes of action by VIP, Robinson, or Slider  based in tort and/or contract;

(g)     that Tyler be awarded its costs of court;

(h)     that Tyler be awarded its attorneys' fees; and

015789.00013:991452.02

(i)     that Tyler be awarded such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

HUGHES & LUCE, L.L.P.

/s/ John W. Patton
John W. Patton
Texas Bar No. 00798422
Megan K. Dredla
Texas Bar No. 24050530
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500  (Office)
(214) 939-6100  (Fax)
pattonj@hughesluce.com
megan.dredla@hughesluce.com

**ATTORNEYS FOR PLAINTIFF TYLER TECHNOLOGIES, INC.**

015789.00013:991452.02